IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

STEPHAN JOHNSON,

                    Plaintiff,

vs.

MID-CENTURY INSURANCE
COMPANY and JOHN DOES A-D,

                    Defendants.

CV 22-53-BU-KLD

ORDER

This insurance dispute comes before the Court on Defendant Mid-Century Insurance Company's ("Mid-Century") motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (Doc. 5), and Plaintiff Stephan Johnson's motion to remand for failure to meet the jurisdictional amount in controversy requirement for diversity of citizenship cases under 28 U.S.C. § 1332(a) (Doc. 9). For the reasons discussed below, Johnson's motion is denied and Mid-Century's motion is granted.

## I.   **Background**[1]

Johnson's claims stem from a one-vehicle rollover accident that occurred on October 27, 2018, near Anaconda, Montana. (Doc. 1-1, ¶¶ 7, 11). Johnson, who

---

[1] Consistent with the legal standards applicable to Rule 12(b)(6) motions, the following facts are taken from the Complaint, evidence on which the Complaint

was a passenger in the vehicle, sustained injuries as a result of the accident, including a spinal compression fracture, lacerations, and a contusion of his right shoulder. (Doc. 1-1, ¶ 11).

On February 22, 2019, Johnson reached a $50,000 settlement agreement for the per person bodily injury policy limits under the vehicle owner's insurance policy. (Doc. 1-1, ¶¶ 8, 15). Johnson personally insured four vehicles under Mid-Century automotive policy No. 19470-91-32, which provided $50,000 in per person underinsured motorist ("UIM") coverage, and a fifth vehicle under automotive policy No. 19470-91-31, which provided $35,000 in per person UIM coverage. (Doc. 1-1, ¶¶ 17–18). Both policies contained Endorsement MT028 – 1st Edition, which further defined the limits of the UIM coverage available under Johnson's policies, and included the following "anti-stacking" provision:

> 4.   If any applicable insurance other than this policy is issued to you by us or any other member company of the Farmers Insurance Group of Companies, the total amount payable among all such policies shall not exceed the limits provided for the single vehicle with the highest limits of liability.

(Doc. 1-1, ¶ 41).[2]

---

necessarily relies, and court documents of which this Court may take judicial notice.

[2] To "stack" coverage means to add the UIM policy limit from an insurance policy on one vehicle to the UIM policy limit from an insurance policy on another vehicle. For instance, "an insured with three vehicles and paying a separate premium for UIM coverage on each vehicle could 'stack,' or add, the three UIM

On July 11, 2019, Johnson demanded $85,000 from Mid-Century for stacked UIM benefits under his two policies. (Doc. 1-1, ¶ 19). On July 16, 2019, Mid-Century paid Johnson $50,000, the highest per person UIM policy limit under automotive policy No. 19470-91-32, but declined to pay the additional $35,000 under policy No. 19470-91-31. (Doc. 1-1, ¶¶ 19–23). Mid-Century determined the policies did not stack because Mid-Century had only charged Johnson a single premium of $21.40 for UIM coverage under both policies. (Doc. 1-1, ¶¶ 23–25).

On June 28, 2022, Johnson filed this action with the Montana Third Judicial District Court, Deer Lodge County, (Doc. 1-1), and served Mid-Century's registered agent on July 8, 2022, (Doc. 1, ¶ 4). In his Complaint, Johnson asks the Court to declare that he is entitled to stacked UIM coverage (Count II) and that Mid-Century's Endorsement MT028 is voidable as illusory coverage against public policy (Count I). (Doc. 1-1, ¶¶ 42, 44). Johnson alleges entitlement to common fund fees (Count III), attorney fees (Count IV), and non-taxable costs (Count V). (Doc. 1-1, ¶¶ 51, 54, 58).

On July 29, 2022, Mid-Century timely removed the action to this Court based on 28 U.S.C. § 1332(a) diversity of citizenship. (Doc. 1, at 1). On August 5, 2022, Mid-Century moved to dismiss all claims, arguing Johnson failed to state a

---

coverages together and feasibly collect the triple amount." *Parish v. Morris,* 278 P.3d 1015, 1017 n.1 (Mont. 2012).

plausible claim for relief because his claim for stacked coverage is precluded by the policy language and established Montana law. (Doc. 5). Johnson filed a motion to remand on August 22, 2022, arguing Mid-Century failed to prove the amount in controversy jurisdictional limit as required by 28 U.S.C. § 1332(a). (Doc. 10).

The Court will discuss Johnson's motion to remand before considering the merits of Mid-Century's motion to dismiss, providing additional facts as necessary.

## II.   Discussion

### A. Johnson's Motion to Remand

"Under 28 U.S.C. § 1441(a), any 'state-court action[] that originally could have been filed in federal court may be removed to federal court by the defendant.'" *Fuss v. Blue Cross & Blue Shield of Mont., Inc.*, No. CV 12-83-M-DLC-JCL, 2012 U.S. Dist. LEXIS 200462, at *7–8 (D. Mont. Sep. 10, 2012) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Federal jurisdiction in a diversity of citizenship case requires the amount in controversy "exceed $75,000, exclusive of interest and costs to the plaintiff." *Drange v. Mountain West Farm Bureau Mut. Ins. Co.*, No. CV 20-30-BLG-SPW, 2021 WL 1597924, at *1 (D. Mont. April 23, 2021) (citing 28 U.S.C. § 1332(a)[3]).

---

[3] Diversity of citizenship is not at issue in this case. *See* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between— (1) citizens of different states . . . .").

The amount in controversy is "the amount at stake in the underlying litigation" as "determined by the complaint operative at the time of removal" and encompassing "all relief a court may grant on that complaint if the plaintiff is victorious," including damages and a reasonable estimate of future attorney fees likely incurred. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 791–94 (9th Cir. 2018) (citing *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) and *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018) (internal quotation marks omitted)). When a defendant's assertion of the amount-in-controversy for federal jurisdiction is challenged, the defendant bears of the burden of establishing by a preponderance of the evidence that the necessary amount existed at the time of removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 849 (9th Cir. 2020).

When assessing the amount in controversy, in addition to the complaint, a court may consider factual allegations in the removal petition, as well as relevant "summary-judgment-type evidence." *Fritsch*, 899 F.3d at 793. "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions," *Ibarra v. Manheim Invests., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015), but judges may rely on "their judicial experience and common sense." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061–62 (11th Cir. 2010).

Johnson asks this Court to find that because MT028 is illusory coverage against public policy, his UIM coverage stacks, entitling him to the following relief: (1) an additional payment of $35,000 in underinsured motorist coverage under policy No. 19470-91-31; (2) damages as allowable under Montana law from the negligence of the underinsured driver, including but not limited to pain and suffering, loss of established course of life, past and future medical expenses, and emotional distress damages; (3) his attorney fees; (4) common fund fees; and (5) his costs. Johnson does not specify the amount of attorney fees he seeks.

Mid-Century asserts that removal is proper in this case because the amount in controversy exceeds the jurisdictional minimum of $75,000 when Johnson's claims for declaratory judgment and his future attorney fees, which Mid-Century estimates to be around $50,000, are added together. (Doc. 1, 20). In his motion for remand, Johnson disputes that $50,000 is a reasonable estimate of future attorney fees he is likely incur because, Johnson argues, any calculation of additional attorney fees beyond the agreed upon 40–45% contingency fees is speculative.[4]

---

[4] The Court notes that Johnson did not provide a copy of his contingency fee agreement. However, Johnson states, should he prevail, "[o]f course, load star [sic] attorney fees could also be calculated," indicating he may seek hourly attorney fees as permitted under *Mountain West Farm Bureau Mutual Insurance Co. v. Brewer*, 69 P.3d 652 (Mont. 2003), if successful. (Doc. 10, at 7). *See also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir.2011) ("The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer.").

Alternatively, Johnson contends that Mid-Century has failed to meet its evidentiary burden to show $50,000 in attorney fees is a reasonable estimate in this case. Mid-Century counters that, even if Johnson limits his personal attorney fees, Johnson's claim for common fund fees raises his potential recovery in this case "well over the jurisdictional line." (Doc. 18, at 4).

The Court will address each argument in turn.

### 1. Attorney Fees

As to Johnson's first argument, that any claim for attorney fees beyond the 40–45% provided for in his contingency agreement is speculative, the Court disagrees. Montana recognizes several equitable exceptions to the general American Rule that a party in a civil action is not entitled to attorney fees absent a specific contractual or statutory provision. *Brewer*, 69 P.3d at 655. In *Brewer*, the Montana Supreme Court held that, under the insurance exception to the American Rule, an insured is entitled to recover attorney fees "when the insurer forces the insured to assume the burden of legal action to obtain the full benefit of the insurance contract." 69 P.3d at 660.

As Johnson plainly alleges in his Complaint, were he to prevail on his UIM claim, which forced him to assume the burden of legal action to obtain the full benefit of his insurance contract with Mid-Century, he would be entitled to recover his reasonable attorney fees under *Brewer*. (Doc. 1-1, ¶¶ 53–54). Therefore, the

Court finds that because "the law entitles [Johnson] to recoup those [attorney fees] if [he] prevails, then there is no question that future [attorney fees] are 'at stake' in the litigation, whatever the likelihood that [he] will actually recover them." *Fritsch*, 899 F.3d at 793–94.

Regarding Johnson's second argument, the Court is not persuaded Mid-Century has met its evidentiary burden to establish that $50,000 is a reasonable estimate of attorney fees in this case. "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin*, 574 U.S. at 87. However, once disputed, the preponderance of the evidence standard applies. Fed. R. Civ. P. § 1446(c)(2)(B). Under this standard, the defendant must introduce evidence to show "it is more likely than not that the amount in controversy exceeds the jurisdictional amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566–67 (9th Cir. 1992) ("If it is unclear what amount of damages the plaintiff has sought . . . then the defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount.").

To support its attorney fee estimation, Mid-Century relies primarily on *Drange*, which it describes as a case involving a request for declaratory relief for UIM coverage in which the insurer estimated $50,000 in attorney fees "based on

attorney fee awards in similar cases involving an insurance dispute." (Doc. 18, at 5). But *Drange* is distinguishable. For one, there are notable differences in the complexity of the litigation. The plaintiffs in *Drange* pursued claims for $8,762.40 in contract damages, a further $8,762.40 in damages under the Unfair Trade Practices Act ("UTPA"), and punitive damages. 2021 WL 1597924, at *1.[5] Alternatively, the plaintiffs brought claims under the Class Action Fairness Act ("CAFA"), alleging an anticipated class size of more than 100 members. *Drange*, 2021 WL 1597924, at *1. Thus, the insurer's $50,000 estimate in *Drange* did not rely solely on case law, as Mid-Century argues here; the court based its decision in part on legal precedent, but also "on the experience of the attorneys involved and the complexity of the case." 2021 WL 1597924, at *1. And, critically, to support its claim, the insurer's legal counsel provided the court an affidavit stating she had "already incurred fees in excess of $50,000 in motions practice in [the] case." *Drange*, 2021 WL 1597924, at *2.

Johnson has not alleged claims under the UTPA or CAFA, or made a claim for punitive damages. Mid-Century has not argued this case is especially complicated, nor has it submitted, by affidavit or otherwise, any actual evidence to prove its $50,000 attorney fee estimate is reasonable under the specific facts of this case. As such, Mid-Century has not proven by a preponderance of the evidence

---

[5] The Court acknowledges that attorney fees are not recoverable under the UTPA.

that Johnson's attorney fees alone elevate his claims above the federal

jurisdictional threshold.

However, as discussed below, the Court finds that Mid-Century has

nonetheless sufficiently proven facts to support the $75,000 jurisdictional amount

in controversy because Johnson's Complaint contains broad common fund

allegations, which if successful, would likely be considerable.

### 2.  *Common Fund Fees*

A second recognized equitable exception to the American Rule is the

common fund doctrine. *Mountain West Farm Bureau Mut. Ins. Co. v. Hall*, 38 P.3d

825, 828 (Mont. 2001). Creating a common fund requires satisfaction of the

following three elements: (1) one party must create, reserve or increase a common

fund as an existing, identifiable monetary fund or benefit to which all beneficiaries

maintain an interest; (2) the active beneficiaries must incur legal fees in

establishing the common fund; and (3) the common fund must benefit

ascertainable, non-participating beneficiaries. *Hall*, 38 P.3d at 828–29.

The doctrine is "rooted in the equitable concepts of quasi-contract,

restitution and recapture of unjust enrichment," and "entitles the party who created

the fund to reimbursement of his or her reasonable attorney fees from the common

fund." *Hall*, 38 P.3d at 828; *Murer v. State Comp. Mut. Ins. Fund*, 942 P.2d 69, 76

(Mont. 1997) (holding that absent common fund claimants owed reasonable

attorney fees in a workers' compensation case where "institutional wrong may not be sufficient from an economic viewpoint to justify the legal expense necessary to challenge that wrong"). It is well-established that certain common fund claims can be aggregated for purposes of establishing the amount in controversy. *Troy Bank of Troy, Ind., v. G.A. Whitehead & Co.*, 222 U.S. 39, 40–41 (1911) (holding that "when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount").

As the amount in controversy "is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious," *Frisch*, 899 F.3d at 79, the Court must consider any and all relief it may grant on Johnson's common fund claim if he is victorious. Johnson's Complaint alleges he "will incur attorney fees in litigating against Mid-Century to establish the availability of stacking UIM benefits under Mid-Centuries [sic] policies." (Doc. 1-1, ¶ 49). Johnson contends that in the event he is successful in establishing that Mid-Century Endorsement MT028 is against public policy, a common fund would be created and apply to all similarly situated Mid-Century insureds who were injured and denied stacking UIM coverage under MT028 within the past eight years. (Doc. 1-1, ¶ 51). Thus, Johnson claims he would be entitled to

reimbursement of his reasonable attorney fees from that fund. (Doc. 1-1, ¶ 47 (citing *Murer*, 942 P.2d at 76)).

For the purpose of jurisdiction, the Court presumes that Johnson has asserted a plausible common fund claim. In his remand motion, Johnson argues the common fund fees are too speculative for the Court to consider. He argues the true amount in controversy is only $49,000 ($35,000 in damages and $14,000 in future attorney fees based on the contingency agreement). The Court disagrees.

Johnson points to *Snow v. Watkins and Shepard Trucking, Inc.*, to argue against the proposition that a benchmark percentage of the overall award could ever be a reasonable estimate of attorney fees in a class action case involving a common settlement fund. No. CV 18-2206-DMG (SPx), 2019 WL 1254571, *1 (C.D. Cal. Mar. 18, 2019). But the holding in *Snow* was narrower than Johnson contends. The court held that assuming a flat 25% benchmark rate for attorney fees in *Snow* failed to prove by a preponderance of the evidence that the class would recover $798,120.56 in attorney fees. 2019 WL 1254571, at *4. This significant amount, in addition to the court's determination that the defendant had improperly assumed a 100% violation rate, was roughly 51% of the defendant's total estimated amount in controversy. *Snow*, 2019 WL 1254571, at *4. The court reasoned that "[s]ince Defendant has failed to adequately establish a basis for such a substantial portion of the $6,456,603.84 value it assigns to the case for CAFA jurisdiction

purposes, the Court cannot conclude that it has satisfied CAFA's jurisdictional minimum by a preponderance of the evidence." *Snow*, 2019 WL 1254571, at *4.

Here, Johnson is seeking common fund fees for every Mid-Century insured who was wrongfully denied stacked UIM coverage under MT028 within the past eight years. Even assuming Johnson's personal attorney fee recovery is limited to $14,000, and further assuming common fund attorney fees at a 10% benchmark rate, Johnson's common fund claim would exceed the jurisdictional limit if a total of eight plaintiffs over the last eight years recovered $35,000 from Mid-Century's failure to stack their UIM policies. This is entirely plausible and far from the $3,264,121.56 amount-in-controversy discrepancy before the court in *Snow*.

Because Johnson has pled a common fund claim in addition to a first-party insurance claim, Johnson's reasonable attorney fees and common fund fees are both "at stake" in this litigation. While Johnson has not claimed any specific amount of anticipated common fund fees, in the Court's experience and common sense, when aggregated with his $35,000 policy limit claim, Johnson's personal attorney fee and common fund fee claims reasonably put in controversy an excess of the $75,000 diversity jurisdictional requirement. *See Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.").

Accordingly, Mid-Century has satisfied the amount in controversy requirement for federal jurisdiction by a preponderance of the evidence and Johnson's motion to remand is denied.[6]

**B. Mid-Century's Motion to Dismiss**

Mid-Century argues that Johnson fails to state a claim for relief under Rule 12(b)(6) because Mid-Century's policies comply with Montana's anti-stacking statute, Montana Code Annotated § 33-23-203, and the Montana Supreme Court's decision in *Parish v. Morris*, 278 P.3d 1015, 1019–20 (Mont. 2012), which permits insurers to prohibit the stacking of insurance coverage limits, regardless of the number of vehicles covered, where only one premium is charged so long as certain conditions are met. Johnson counters that *Parish* is inapposite because Johnson paid separate premiums under each of his two Mid-Century policies. For the reasons discussed below, the Court finds that because Mid-Century charged Johnson only one premium for UIM coverage, his UIM coverage does not stack.

*1. Legal Standard*

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is

---

[6] Because the Court finds Mid-Century had an objectively reasonable basis for removal, Johnson's claim for attorney fees under 28 U.S.C. § 1447(c) based on Mid-Century's allegedly "wrongful" removal is also denied. *See Moore v. Permanente Med. Grp., Inc.*, 981 F.2d 443, 446 (9th Cir. 1992) (whether to award fees lies with the discretion of the court).

14

proper under Rule 12(b)(6) only when the complaint lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). When reviewing a Rule 12(b)(6) motion to dismiss, the court accepts all factual allegations in the complaint as true and construes the pleading in the light most favorable to the nonmoving party. *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021).

Dismissal under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a 12(b)(6) motion to dismiss, a plaintiff's complaint must contain sufficient facts "to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Plausibility is context-specific, requiring courts to draw on judicial experience and common sense when evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss. *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1010 (9th Cir.

2011); *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Generally, a district court may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6). *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). When matters outside the pleadings are considered, the motion to dismiss under Rule 12(b)(6) is treated as one for summary judgment under Rule 56. *See Khoja*, 899 F.3d at 998; *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 921–22 (9th Cir. 2004).

There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201. *Khoja*, 899 F.3d at 998 (explaining the two exceptions). The incorporation-by-reference doctrine allows a court to consider evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may take judicial notice of undisputed "matters of public record" including other state or federal court proceedings. *Lee*, 250 F.3d at 688–89; *Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir. 1995).

In his state court complaint, Johnson referenced both Mid-Century auto insurance policies (Doc 1-1, ¶¶ 17–18), and attached a copy of both policy declaration pages, as well as the complete "E-Z Reader Car Policy" and endorsements for policy No. 1947091-32. (Doc. 1-1, at 15–71). Attached to its brief in support of its motion to dismiss, Mid-Century filed a declaration from Michael Sperduto, senior actuary at Mid-Century, and two exhibits: (1) a copy of its filing memo to the State of Montana and a correspondence summary and disposition sheet showing its personal auto policy rates were "reviewed and filed" with the Commissioner on December 4, 2017, as well as (2) Mid-Century's private passenger automobile insurance rating algorithm matrix. (Docs. 6-1, 6-2, 6-3).

Much of the testimony in Sperduto's declaration is neither referred to in the complaint nor facts of which the Court can take judicial notice; therefore, the Court cannot consider it in resolving this motion to dismiss. However, the Court will consider adjudicative facts contained in the declaration to the extent they provide foundation for matters of public record "not subject to reasonable dispute." Fed. R. Evid. 201(b). Accordingly, the Court will consider the correspondence summary and disposition document for SERFF Tracking No. FARM-131283920 because the fact that Mid-Century's auto policy rates were reviewed and filed by the commissioner is a matter of public record "not subject to reasonable dispute," and an adjudicative fact that Johnson has neither discussed nor disputed in his briefing.

### 1.  Montana's Anti-stacking Law

Montana's anti-stacking statute, Montana Code Annotated § 33-23-203,

"was revised by the Montana Legislature in 2007 and became effective on April

17, 2007." *Parish*, 278 P.3d at 1018. Montana law permits an insurer to prohibit

stacking coverages under one or more motor vehicle policies, "regardless of the

number of motor vehicles insured under the policy, the number of policies issued

by the same company covering the insured, or the number of separate premiums

paid," if: (1) "the premiums charged for the coverage by the insurer actuarially

reflect the limiting of coverage separately to the vehicles covered by the policy

and" (2) "the premium rates have been filed with the commissioner." Mont. Code

Ann. § 33-23-203(1)(c); *Lowe v. Trinity Universal Ins. Co.*, No. CV 13-08-BU-

DLC, 2013 WL 11319238, *3 (D. Mont. July 9, 2013).

In *Parish*, the Montana Supreme Court held that an endorsement lawfully

prohibited stacking uninsured motorist ("UM") coverage when multiple vehicles

were insured under a single policy because: (1) the insurance policy clearly stated

that stacking was not allowed; (2) the insurance company complied with Montana

Code Annotated § 33-23-203; and (3) the insureds were not "charged separate UM

premiums for each insured vehicle." *Lowe*, 2013 WL 11319238, at *3 (citing

*Parish*, 287 P.3d at 1019). The Supreme Court concluded that, regardless of the

plaintiff's claim that "the calculation of the premium was done on a per vehicle

basis," the critical question was whether the plaintiffs were "*charged* separate UM premiums for each insured vehicle." *Parish*, 278 P.3d at 1019.

Here, MT028 unambiguously prohibits stacking as it states the total amount of UIM coverage payable under "any applicable insurance other than this policy [that] is issued to you by us" is limited to "the limits provided for the single vehicle with the highest limits of liability." (Doc. 1-1, at 63). Additionally, the Court finds Mid-Century charged premium rates that were actuarily appropriate because the rates were filed with and reviewed by the Montana Insurance Commissioner. (Doc. 6-2, at 2 ("Status: Rates Reviewed and Filed")). *See Lowe*, 2013 WL at *3 (finding "the premium rates charged by the defendant were actuarily appropriate because the rates were filed with and reviewed by the Montana Department of Insurance"). Thus, because Mid-Century has established MT028 otherwise complies with Montana law, the sole issue before the Court is whether Johnson was charged a separate premium for UIM coverage under each of his two policies.

Johnson argues that because he had two separate policies, Mid-Century charged him two separate premiums, including the $21.40 for UIM coverage under policy No. 19470-91-31 and an "undisclosed amount of [policy No. 19470-91-32]'s $2,248.40 premium for UIM coverage on four vehicles." (Doc. 17, at 13). Mid-Century maintains that, because the policy declaration pages show it charged

Johnson only one UIM premium between his two policies, MT028 is valid and enforceable under Montana law. The Court agrees with Mid-Century.

The declaration page for policy No. 19470-91-31 shows that Johnson paid a full-term premium of $455.00 for coverage on a 1997 Chevrolet pickup truck. (Doc. 1-1, at 69). The full-term premium amount includes three "vehicle level" coverage items: bodily injury liability for a per vehicle premium of $205.20, property damage liability for a per vehicle premium of $138.50, and towing and road service for a per vehicle premium of $6.80. (Doc. 1-1, at 69). Additionally, the $455.00 premium includes two "policy level" coverage items: UM coverage for a per policy premium of $83.10 and UIM coverage for a per policy premium of $21.40, each with a $35,000 per person and $70,000 per accident coverage limit. (Doc. 1-1, at 70).

The declaration page for policy No. 19470-91-32 shows that Johnson paid a full-term premium of $2,248.40 for coverage on four vehicles: a 2008 Chevrolet truck, a 2003 Cadillac Deville, a 2003 Jeep Liberty, and a 2011 Dodge Ram. (Doc. 1-1, at 17). The full-term premium amount sets forth the identical vehicle-level coverage items as Johnson's other policy, with the addition of comprehensive and collision coverage for the Dodge Ram, but because this policy covers multiple vehicles, the declaration page specifies the premium amounts for each type of coverage across four columns, one for each vehicle. (*See* Doc. 1-1, at 18). Below,

the declaration page lists a policy-level premium of $88.50 for medical coverage, and provides that UM and UIM benefits up to $50,000 per person and $100,000 per accident for all vehicles are "covered" under the policy. (Doc. 1-1, at 18). The individual premium dollar amounts listed for all vehicle-level coverage and the policy-level medical coverage total $2,248.40. The declaration pages for both policies list MT028 as an applicable endorsement. (Doc. 1-1, at 19, 70).

Based on the evidence in the record, the Court concludes that, while UIM coverage is clearly provided for under policy No. 19470-91-32, Mid-Century did not charge Johnson a separate premium for UIM coverage under that policy. The only premium Johnson paid for UIM coverage was the $21.40 he paid under policy No. 19470-91-31.

Johnson further argues that *Parish* and *Lowe* are distinguishable because those cases concerned one policy covering multiple vehicles whereas here, Johnson paid valuable consideration for each of his two policies, which provided two distinct amounts of UIM coverage. (Doc. 17, at 12–13). This is a distinction without a difference because Montana law plainly permits insurers to avoid stacking by complying with the *Parish* three-part test "regardless of the number of motor vehicles insured under the policy [or] the number of policies issued by the same company covering the insured." Mont. Code Ann. § 33-23-203(1).

Accordingly, Johnson is not entitled to stacked UIM coverage under the terms of his insurance policies with Mid-Century and Count II is dismissed.

### 2. Johnson's Additional Claims

Because the Court has determined that Mid-Century's Endorsement MT028 complies with Montana law, Johnson's claim that MT028 is voidable as illusory coverage against public policy (Count I) must fail. Further, as Johnson has failed to establish a plausible claim for relief under his substantive counts, Counts III–VI are dismissed as moot.

### III. <u>Conclusion</u>

For the reasons discussed above,

IT IS ORDERED that Plaintiff's Motion to Remand (Doc. 9) is DENIED and Defendant's Motion to Dismiss the Complaint for failure to state a claim for relief under Rule 12(b)(6) (Doc. 5) is GRANTED.

DATED this 16th day of March, 2023.

Kathleen L. DeSoto
United States Magistrate Judge